1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRENDAN DUNN, et al.,

               Plaintiffs,

   v.

MATTHEW HYRA, et al.,

               Defendants.

CASE NO. C08-978JLR

ORDER ON MOTION FOR
SUMMARY JUDGMENT

     This matter comes before the court on Defendants' motion for summary judgment (Dkt. # 62). At oral argument on October 29, 2009, the court granted summary judgment to Defendants on a number of Plaintiffs' claims. (Dkt. # 93.) Following oral argument, the court took the remaining issues under consideration. Having reviewed the papers filed in support and opposition, and having heard oral argument, the court GRANTS in part and DENIES in part the remainder of Defendants' motion for summary judgment (Dkt. # 62).

# I. BACKGROUND[1]

This action arises out of events that took place at the "World Can't Wait" peace rally at Cal Anderson Park in Seattle, Washington, on October 5, 2006.  In the days before the rally, Kay Rood, a member of the Friends of Cal Anderson Park, saw anonymous postings on the Internet calling for "anarchists and anti-authoritarians . . . to assemble under the anarchist flag and, from there, cause some sort of disruption or damage." (Declaration of Kay Rood ("Rood Decl.") (Dkt. # 65) ¶ 10.)  On the morning of the rally, Ms. Rood walked to the park and told Officer Matthew Hyra, who was patrolling the park on his bicycle, about the postings.  (*Id.* ¶ 12.)  Ms. Rood did not show the actual postings to Officer Hyra.  (*Id.*)

Officer Hyra told his supervisors, Lieutenant John Hayes and Sergeant Ann Martin, about Ms. Rood's fear that a disruptive anarchist group would rally under a black flag.  (Declaration of Heather Carr ("Carr Decl.") (Dkt. # 63), Ex. 1 (Deposition of Matthew Hyra) ("Hyra Dep.") 89:18-19.)  Lieutenant Hayes determined that Officer Hyra and his partner, Officer Steven Bale, would "socially contact" persons at the rally who possessed such flags to determine how they intended to use the flags.  (Hyra Dep. 89:20-90:5.)

---

[1] For purposes of this motion, the court views the evidence in the light most favorable to the Plaintiffs.

## A. Removal of the Flag

Plaintiffs Brendan Dunn, Jacob Erwin, and Ryan Tompkins attended the rally. The three men, along with about a dozen others, were sitting in the park socializing and eating lunch. (Declaration of Ryan Tompkins ("Tompkins Decl.") (Dkt. # 70) ¶ 6.)[2] Some members of the group passed out anarchist literature. (Declaration of Brendan Dunn ("Dunn Decl.") (Dkt. # 72) ¶¶ 20-21.) In his lap, Mr. Erwin held a large black-and-red "anarcho-syndicalist" flag attached to a bent metal pole. (*Id.* ¶¶ 6, 29.) The flag belonged to Mr. Dunn. (*Id.* ¶ 6.)

Officer Hyra and Officer Bale saw Mr. Erwin holding the black-and-red flag. Officer Hyra states that he did not identify Plaintiffs based on their political affiliation, but rather based on the fact that they possessed a flag matching the description provided by Ms. Rood. (Hyra Dep. 90:10-22.) The officers approached Mr. Erwin, and Officer Hyra took the flag from Mr. Erwin's lap. (Declaration of Jacob Erwin ("Erwin Decl.") (Dkt. # 71) ¶ 24.) Mr. Erwin states that he did not see Officer Hyra before the flag was unexpectedly "ripped" from his hand. (Erwin Decl. ¶ 24; Carr Decl., Ex. 3 (Deposition of Jacob Erwin) ("Erwin Dep.") 55:8-12.) Although Officer Hyra states that he tapped Mr. Erwin on the shoulder before taking the flag, it is undisputed that Officer Hyra did not speak to Mr. Erwin before he took the flag. (Hyra Dep. 56:21-24.) Officer Hyra

---

[2] Defendants moved to strike paragraphs of Plaintiffs' declarations. The court did not rely on the challenged paragraphs in deciding this motion for summary judgment.

contends that he did not intend to take the flag; he intended only to take the pole because it presented a safety hazard.  (*Id.* 116:10-15.)

After he took the flag, Officer Hyra told Mr. Erwin to "get up and come with me." (Erwin Decl. ¶ 27; Erwin Dep. 55:13-17.)  Mr. Erwin asked Officer Hyra to explain why he took the flag and why he wanted Mr. Erwin to go with him.  (Erwin Decl. ¶ 35.)  Officer Hyra did not answer, and again told Mr. Erwin to come with him. (Erwin Decl. ¶¶ 35-36; Erwin Dep. 55:18-25.)

At this point, other members of the group began to ask Officer Hyra why he had taken the flag and to demand that he return it.  (Erwin Decl. ¶¶ 41-42.)  Officer Hyra began to walk away, carrying the flag and pushing his bicycle.  (Erwin Decl. ¶ 43; Dunn Decl. ¶ 40.)  The group, which by now consisted of about 15 to 20 people including Mr. Erwin and Mr. Dunn, followed Officer Hyra and continued to ask him to return the flag. (Erwin Dep. 56:7-11; Erwin Decl. ¶ 50.)  Mr. Dunn also shouted, "Who wants to witness suppression of free speech?"  (Dunn Decl. ¶ 46.)

Officer Hyra contends that he told Mr. Erwin that he would return the flag after they talked.  (Declaration of Lawrence A. Hildes ("Hildes Decl.") (Dkt. # 73), Ex. 5 (Deposition of Matthew Hyra) ("Pls. Hyra Dep.") 66:20-23.)  "Seconds" after he tried to initiate the social contact with Mr. Erwin, however, Officer Hyra was "pelted with expletives, surrounded, yelled at." (Hyra Dep. 126:14-16.)  Officer Hyra refused to return the flag while they were surrounded by the group because he feared that Mr. Erwin would use it as a weapon.  (*Id.* 175:17-23.)

**B.      Plaintiffs' Arrests**

At this point, Officer Bale called for additional officers.  The officers, including Lieutenant Hayes, Sergeant Martin, Officer Richard Roberson, Officer John Skommesa, Officer Tim Greeley, and Officer Monique Avery, soon began to arrive on the scene to help Officer Hyra and Officer Bale.  The exact sequence of the events that followed is in dispute, but by the end, all three Plaintiffs had been arrested.

1.      Tompkins

As the group followed Officer Hyra, Mr. Tompkins moved ahead and walked backwards while taking photographs of Officer Hyra and Mr. Erwin.  (Tompkins Decl. ¶¶ 41-42.)  At this point, according to Plaintiffs, Officer Hyra lunged forward and struck Mr. Tompkins with his bicycle, running the bicycle wheel over Mr. Tompkins's foot and up his leg.  (Tompkins Decl. ¶ 45, 48-50; Erwin Decl. ¶¶ 53-54; Dunn Decl. ¶ 49.)  Mr. Tompkins shouted, "Hey, watch it asshole!"  (Tompkins Decl. ¶¶ 53-54.)  Officer Hyra then rested the bike on its kickstand, grabbed Mr. Tompkins's backpack, threw Mr. Tompkins into a nearby tree, and pinned him against the tree.  (Dunn Decl. ¶¶ 53-55; Erwin Decl. ¶¶ 60, 69; Tompkins Decl. ¶¶ 66-68.)  Mr. Erwin tried to grab Mr. Tompkins to pull him away from Officer Hyra.  (Erwin Decl. ¶¶ 65, 70.)

According to Officer Hyra, however, Mr. Tompkins was blocking his path.  (Hyra Dep. 158:21-159:6.)  Officer Hyra contends that he told Mr. Tompkins three times that he would be arrested for obstruction if he did not get out of the way, and that Mr. Tompkins intentionally walked into the bike after Officer Hyra's third order.  (*Id.*)

When he tried to take control of Mr. Tompkins's arms to arrest him, Officer Hyra felt

someone hanging from his back, trying to pull him away from Mr. Tompkins.  (*Id.*

147:10-22.)  Officer Hyra could not see the person who was on his back, but was later

told by other officers that it was Mr. Dunn.  (*Id.*)  Officer Hyra felt other people try to

remove his gun and to take away the flag, but he could not identify them.  (*Id.* 119:2-14.)

Officer Bale helped Officer Hyra take Mr. Tompkins into custody.  Mr.

Tompkins states that Officer Bale grabbed his left hand and pulled his thumb and

forefinger apart, causing pain.[3]  (Tompkins Decl. ¶¶ 73-75.)  Mr. Tompkins was then

handcuffed, and Officer Hyra placed Mr. Tompkins under arrest.  (*Id.* ¶ 79.)

2.    Erwin

It is undisputed that Mr. Erwin was trying to pull Mr. Tompkins away from

Officer Hyra.  (*See* Erwin Decl. ¶¶ 65, 70 (stating that Erwin "reached for [his] friend, to

pull him away from the officer"); Carr Decl., Ex. 2 (Deposition of Steven Bale) ("Bale

Dep.") 148:3-16.)  When Officer Roberson arrived, Officer Bale ordered him to arrest

Mr. Erwin.  Mr. Erwin states that Officer Roberson pulled him away from Mr.

Tompkins.  (Erwin Decl. ¶¶ 70, 71; Erwin Dep. 69:20-71:17.)  Officer Roberson tried to

bend Mr. Erwin's right thumb back, but Mr. Erwin made his hand into a fist to prevent

the officer from doing so.  (Erwin Dep. 69:20-70:4.)  Officer Roberson then threw Mr.

Erwin to the ground, landing on top of him.  (Erwin Decl. ¶ 75; Erwin Dep. 71:10-17.)

---

[3] None of the officers describe using compliance techniques on Mr. Tompkins.

Officer Roberson and Sergeant Martin handcuffed Mr. Erwin and refused to answer when Mr. Erwin asked why he was being arrested. (Erwin Decl. ¶¶ 79-80; Erwin Dep. 71:6-17.) The officers lifted Mr. Erwin from the ground by his handcuffs, twisting his shoulder. (Erwin Decl. ¶¶ 81-82.)

Officer Roberson testified that he did not put his weight on Mr. Erwin but simply caused him to fall off-balance. (Carr Decl., Ex. 7 (Deposition of Richard Roberson) ("Roberson Dep.") 38:1-25.)[4]

### 3.    Dunn

Mr. Dunn states that he did nothing more than try to take photographs of the confrontation between Mr. Tompkins and Officer Hyra. (Dunn Decl. ¶¶ 56-58.) He asserts that he never touched Officer Hyra and remained at least three feet away from Officer Hyra at all times. (*Id.* ¶¶ 45, 77.) When he moved away from the group he was tackled by Officer Skommesa, handcuffed, and placed under arrest. (*Id.* ¶¶ 69-72.) Mr. Dunn was in pain after the arrest because he landed on top of his camera and because his handcuffs were too tight. (*Id.* ¶ 70; Dunn Dep. 262:13-22.)

Defendants' account is very different. Officer Skommesa states that when he arrived, he saw Mr. Dunn "holding the back of Officer Hyra's jacket." (Carr Decl., Ex. 8 (Deposition of John Skommesa) ("Skommesa Dep.") 45:3-11; *see also* Hyra Dep.

---

[4] Officer Bale stated in his deposition that he touched Mr. Erwin. (*See* Bale Dep. 146:3-10, 147:4-23, 150:6-23.) Mr. Erwin, however, does not mention Officer Bale in his declaration, and he expressly stated during his deposition that only Officer Roberson and "a Caucasian female officer" ever touched him. (*See* Erwin Decl. ¶¶ 70-77; Erwin Dep. 84:15:20.)

147:10-22.)  Officer Skommesa grabbed Mr. Dunn by his shirt and ordered him to let go of Officer Hyra.  (Skommesa Dep. 45:5-6.)  When Mr. Dunn tried to pull away from Officer Skommesa, Officer Skommesa pushed him sideways, causing him to let go of Officer Hyra's jacket and fall to the ground.  (*Id.* 45:6-10.)  Officer Skommesa and Officer Greeley handcuffed Mr. Dunn, and Officer Skommesa arrested him.  (*Id.* 45:12-15; 51:5-14.)

## C.     Criminal Charges Against Plaintiffs

All three men were taken to the East Precinct for the Seattle Police Department.  Mr. Dunn and Mr. Erwin were placed in the same cell.  (Erwin Decl. ¶ 91.)  Both men state that Officer Hyra came to their cell, asked them about their involvement with anarchists and about their political activities, and told them that the anarchist flag is a symbol of violence.  (Dunn Decl. ¶¶ 87-88, 95; Erwin Decl. ¶ 95.)

Mr. Tompkins was held in a separate cell.  According to Mr. Tompkins, Officer Hyra came to his cell and "proceeded on a bizarre rant" in which he accused him of being involved in a violent anarchist group and told him that it was wrong for him to associate with anarchists.  (Tompkins Decl. ¶¶ 83-88.)  Officer Hyra told Mr. Tompkins that he was familiar with anarchists and that he knew what they were planning to do at the protest.  (*Id.* ¶ 88.)

Both Mr. Erwin and Mr. Tompkins were charged in Seattle Municipal Court with obstructing a law enforcement officer under RCW 9A.76.020 and resisting arrest under SMC 12A.16.050.  (Declaration of Stephen P. Larson ("Larson Decl.") (Dkt. # 90), Ex.

1 ("Erwin Docket"), Ex. 2 ("Tompkins Docket").)  In preliminary arraignment hearings, the municipal court found probable cause to continue with the charges against both Mr. Erwin and Mr. Tompkins.  (*Id.*)  Both Mr. Erwin and Mr. Tompkins filed motions to dismiss the charges against them.  At a hearing on these motions, the municipal court found that the "officers acted unlawfully when they approached Mr. Erwin."  (*Id.*)  The court dismissed all charges against both Mr. Erwin and Mr. Tompkins under *State v. Knapstad*, 729 P.2d 48, 52 (Wash. 1986), which provides that a criminal court may dismiss charges for insufficient evidence before trial.[5]  (*Id.*)

Mr. Dunn, meanwhile, was charged in King County Superior Court with third degree assault under RCW 9A.36.031.  (Larson Decl., Ex. 3 ("Dunn Docket").)  The charge was later dismissed.  (*Id.*)

## II.    ANALYSIS

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates that "there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no material factual dispute and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or

---

[5] This court ruled at oral argument that the municipal court's dismissal of the charges against Mr. Erwin and Mr. Tompkins had no collateral estoppel effect in this case.

her burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

## A.     Claims Not Under Dispute

Plaintiffs made blanket allegations that all of the nine original Defendant Officers were liable for all the alleged violations against all three Plaintiffs.  Defendants point out that these blanket allegations resulted in a total of 540 claims in this case.  (Mot. at 1.) Defendants argued in their motion that certain claims against individual Defendants should be dismissed for Plaintiffs' failure to allege any facts supporting those claims. (*Id.* at 12-13.)  Plaintiffs expressly stated that they would respond to Defendants' arguments only where they disagreed with Defendants' assertions.  (Resp. (Dkt. # 75) at 23.)  Therefore, because Plaintiffs did not respond to Defendants' challenges, the court grants summary judgment to Defendants on the following claims:

1. Plaintiffs' First Amendment claims except as to Officer Hyra, Officer Bale, Sergeant Martin, and Lieutenant Hayes;

2. Mr. Erwin's and Mr. Dunn's Fourth Amendment claims based on seizure of the flag except as to Officer Hyra and Officer Bale;

3. Mr. Tompkins's Fourth Amendment claims based on seizure of the flag;

4. Mr. Erwin's and Mr. Tompkins's claims for conversion against all defendants;[6]

---

[6] Plaintiffs claim for the first time in their response that Defendants are liable for conversion for damaging Mr. Tompkins's backpack.  (Resp. at 27.)  As pleaded, however, their conversion claim is based on Defendants' seizure of the flag.  (*See* Compl. (Dkt. # 4) ¶¶ 4.48-4.53.)

5. Mr. Dunn's claim for conversion except as to Officer Hyra and Officer Bale;

6. Mr. Erwin's state and federal excessive force, assault, battery, false arrest, false imprisonment, and malicious prosecution claims except as to Officer Hyra, Officer Bale, Officer Roberson, and Sergeant Martin;

7. Mr. Tompkins's state and federal excessive force, assault, battery, false arrest, false imprisonment, and malicious prosecution claims except as to Officer Hyra and Officer Bale; and

8. Mr. Dunn's state and federal excessive force, assault, battery, false arrest, false imprisonment, and malicious prosecution claims except as to Officer Skommesa, Officer Greeley, Officer Hyra, and Officer Bale.

## B.    Federal Claims against Individual Officers

Plaintiffs assert numerous claims under 42 U.S.C. § 1983.  They allege that the Defendant Officers violated their rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  (Compl. (Dkt. # 4) ¶¶ 4.1-4.14.)  The Defendant Officers argue that they are entitled to summary judgment on all of Plaintiffs' claims because they are shielded from suit and from liability for any alleged constitutional violation by qualified immunity.  (Mot. at 13-23.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In determining whether an officer is entitled to qualified

immunity, the court engages in a two-step analysis.[7]  The court first asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the answer is no, the court need not inquire further.  By contrast, if a constitutional violation could be made out on a favorable view of the parties' submissions, then the court must ask whether the right was clearly established.  *Id*.  In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id*. at 202 (internal quotation marks and citation omitted).

      1.     <u>Unlawful Seizure of the Flag</u>

      Mr. Erwin and Mr. Dunn assert that Officer Hyra and Officer Bale seized the black-and-red flag in violation of their Fourth Amendment rights.[8]  The Fourth Amendment protects the people from unreasonable searches and seizures of "their persons, houses, papers, and effects."  U.S. Const. amend. 4.  A seizure results if "there is some meaningful interference with an individual's possessory interests in that property."  *Soldal v. Cook County,* 506 U.S. 56, 61 (1992).  The government's

---

    [7]  The Supreme Court has clarified that the two-step sequence is not mandatory.  Rather, courts must "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, __ U.S. __, 129 S. Ct. at 818.  Here, the court uses the *Saucier* two-step approach.

    [8] Although only Mr. Erwin was holding the flag, both Mr. Erwin and Mr. Dunn had possessory interests in the flag.

interference with an individual's possessory interests in property must be reasonable under the circumstances. *Id.* at 63.

Defendants argue that Officer Hyra lawfully seized the flag as a protective measure when he socially contacted Mr. Erwin. (Mot. at 21-22.) They contend that an officer may take immediate protective measures where an officer has legitimate concern for his or her safety during a social contact. (*Id.*) According to Defendants, Officer Hyra was justified in taking the flagpole from Mr. Erwin because he legitimately concluded, based on the information provided by Ms. Rood, that the metal flagpole presented an officer safety hazard. (*Id.*; *see also* Reply (Dkt. # 77) at 4, 11.) Defendants cite *City of Seattle v. Hall*, 806 P.2d 1246, 1249 (Wash. Ct. App. 1991), to support their argument. In *Hall*, while police officers were patrolling an area known for drug trafficking, Mr. Hall approached one of the officers and started to talk with him. *Id.* at 1247. Mr. Hall started to become "hostile, antsy, and nervous" and kept his hands in his pockets. *Id.* Concerned for his safety, the officer frisked Mr. Hall, found a steak knife and a razor blade, and cited him for carrying a concealed weapon. *Id.* The court held that "[w]hen an individual voluntarily approaches an officer and behaves in a manner that causes the officer a legitimate concern for his or her safety, that officer is entitled to take immediate protective measures." *Id.* at 1249.

Here, in stark contrast to *Hall*, Plaintiffs were sitting in the park eating and talking when Officer Hyra approached Mr. Erwin and, without saying a word, took the flag away from him. Even Defendants concede that Officer Hyra never spoke to Mr.

Erwin and that Mr. Erwin never voluntarily approached Officer Hyra or exhibited threatening or unusual behavior before Officer Hyra took the flag.  (*See, e.g.*, Hyra Dep. 56:21-24, 58:21-59:7.)  Viewing the facts in the light most favorable to Plaintiffs, the court finds that the facts alleged show that the officers' seizure of the flag was unreasonable, and that there is a genuine issue of material fact regarding whether Officer Hyra and Officer Bale violated Mr. Erwin's and Mr. Dunn's Fourth Amendment rights.[9]

Having determined that violations of Mr. Erwin's and Mr. Dunn's Fourth Amendment rights could be established on a favorable view of Plaintiffs' evidence, the court must ask whether the right was clearly established.  In other words, the court must determine whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Saucier*, 533 U.S. at 201.  The right to be free from the unreasonable seizure of personal property was clearly established at the time of the events in this case.  *See, e.g.*, *Soldal*, 506 U.S. at 61.  The court determines that a reasonable officer would have understood that it was unlawful to seize a flag from a person sitting in a park without probable cause, reasonable suspicion, or any indication that the person might do him harm.  The court holds that Officer Hyra and Officer Bale

---

[9] Defendants' citation to *State v. Harrington*, 183 P.3d 352 (Wash. Ct. App. 2008) is similarly inapposite.  In that case, the defendant consented to talk with the officer, the defendant began to exhibit suspicious behavior, and the defendant consented to the officer's request to search his pockets.  *Id.* at 352-54.  By contrast, Mr. Erwin was sitting in a park, was not acting nervous, and did not give Officer Hyra consent to take the flag.  *Harrington* therefore does not help Defendants.

are not entitled to summary judgment on the basis of qualified immunity on Mr. Erwin's and Mr. Dunn's unlawful seizure claims.

2. Unlawful Arrest

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (quoting *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007)). A court must consider "the totality of the circumstances known to the arresting officers, to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime." *Id.* (quoting *United States v. Smith,* 790 F.2d 789, 792 (9th Cir. 1986) (internal edits omitted)). "Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." *Id.* (citing *Lopez,* 482 F.3d at 1072). The determination whether there was probable cause is based upon the information the arresting officer had at the time of making the arrest. *Id.* (citing *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004)). A court may not consider additional facts that became known only after the arrest was made. *Id.* (citing *Hansen v. Black,* 885 F.2d 642, 645 (9th Cir. 1989)).

Because each arresting officer in this case had a different set of facts available to him or her at the time the officer made the arrest, the court must determine whether the

facts, viewed in the light most favorable to Plaintiffs, establish that each arresting officer had probable cause to arrest.

　　　　　　*a.　　Erwin*

Mr. Erwin asserts unlawful arrest claims against Officer Hyra, Officer Bale, Officer Roberson, and Sergeant Martin.  Mr. Erwin was arrested for obstructing a law enforcement officer under RCW 9A.76.020[10] and resisting arrest under SMC 12A.16.050.[11]  These charges were later dismissed.

First, Mr. Erwin testified that only Sergeant Martin and Officer Roberson were involved in his arrest.  (Erwin Dep. 84:21-25.)  Because Officer Hyra did not arrest Mr. Erwin, he cannot be liable for *unlawfully* arresting him.  The court therefore grants summary judgment to Officer Hyra on Mr. Erwin's claim for unlawful arrest.[12]

Second, viewing the facts in the light most favorable to Plaintiffs, Officer Roberson and Sergeant Martin had probable cause to arrest Mr. Erwin.  Both officers arrived on the scene in response to Officer Bale's request for backup.  According to Mr.

---

[10] In relevant part, RCW 9A.76.020 provides, "A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties."

[11] In relevant part, SMC 12A.16.050 provides, "A person is guilty of resisting arrest if he or she intentionally prevents or attempts to prevent a peace officer from lawfully arresting him or her."

[12] Plaintiffs argue that because Officer Hyra set the entire set of events in this case in motion by taking the flag, he should be liable for all alleged harms that resulted.  (*See, e.g.*, Resp. at 23.)  At oral argument, Plaintiffs cited *Alexander v. City and County of San Francisco*, 29 F.3d 1355 (9th Cir. 1994), and *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (en banc), as supporting this argument.  The court has reviewed both cases.  Neither supports Plaintiffs' contention.

Erwin's own description of the events, when Officer Roberson and Sergeant Martin arrived, he was trying to pull Mr. Tompkins away from Officer Hyra. (Erwin Decl. ¶¶ 65, 70.) A reasonable officer faced with these facts could have concluded that there was a fair probability that Mr. Erwin was obstructing Officer Hyra in the discharge of his official duties. The court finds that the facts that were known to Officer Roberson and Sergeant Martin, viewed in the light most favorable to Mr. Erwin, established that they had probable cause to arrest Mr. Erwin. The court therefore finds no constitutional violation and grants summary judgment to Sergeant Martin and Officer Roberson on Mr. Erwin's unlawful arrest claim.[13]

Third, unlike Sergeant Martin and Officer Roberson, Officer Bale was present from the beginning of the confrontation between Plaintiffs and Defendants. Viewed in the light most favorable to Plaintiffs, Officer Bale saw Officer Hyra take the flag from Mr. Erwin without provocation and refuse to return it. He was present as Officer Hyra lunged forward to hit Mr. Tompkins with his bike and then threw Mr. Tompkins against a tree. He saw Mr. Erwin try to pull Mr. Tompkins away from Officer Hyra, and he ordered Officer Roberson to arrest Mr. Erwin. Although this is a closer question, the court determines that a reasonable officer who witnessed a person pulling another person

---

[13] Plaintiffs argue that there was no probable cause to arrest any of the Plaintiffs because the arrests "were based on Hyra's illegal conduct." (Resp. at 24.) Under Washington law, however, a person may only use "reasonable and proportional force" to resist an officer's attempt to inflict injury on him during *his own* unlawful arrest. *State v. Valentine*, 935 P.2d 1294, 1304 (Wash. 1997). The Washington Supreme Court has pointed out that third parties attempting to rescue another from an unlawful arrest would be guilty "at least of the gross misdemeanor of obstructing a law enforcement officer." *Id.* at 1300 n.8.

ORDER - 17

away from a police officer would have concluded that there was a fair probability that that person was obstructing a law enforcement officer. The court therefore finds no constitutional violation and grants summary judgment to Officer Bale on Mr. Erwin's unlawful arrest claim.

b.    Tompkins

Mr. Tompkins asserts unlawful arrest claims against Officer Hyra and Officer Bale. Like Mr. Erwin, Mr. Tompkins was arrested for obstructing a law enforcement officer under RCW 9A.76.020 and resisting arrest under SMC 12A.16.050. These charges were later dismissed. Under Plaintiffs' view of the facts, both Officer Hyra and Officer Bale were involved in Mr. Tompkins's arrest.

Viewing the evidence in the light most favorable to Plaintiffs, both Officer Bale and Officer Hyra knew that Officer Hyra took the flag from Mr. Erwin without provocation and refused to return it; that Mr. Tompkins was walking backwards taking photographs as Mr. Dunn and Mr. Erwin asked Officer Hyra to return the flag; and that Officer Hyra lunged forward to hit Mr. Tompkins with his bike and threw Mr. Tompkins against a tree. The court determines that a reasonable officer faced with these facts would not have concluded that there was a fair probability that Mr. Tompkins was obstructing the officers or resisting arrest. The court finds that there is a genuine issue of material fact regarding whether Officer Hyra and Officer Bale had probable cause to arrest Mr. Tompkins.

    *c.*  *Dunn*

Mr. Dunn asserts unlawful arrest claims against Officer Skommesa, Officer Greeley, Officer Hyra, and Officer Bale.  Mr. Dunn was arrested for third degree assault under RCW 9A.36.031.[14]  This charge was later dismissed.

First, Plaintiffs point only to Officer Skommesa's involvement in Mr. Dunn's arrest.  (*See* Dunn Dep. 203:3-204:11; *see generally* Dunn Decl.; *see also* Resp. at 24 (stating that Officer Skommesa was the arresting officer).)  The court therefore grants summary judgment to Officer Greeley, Officer Hyra, and Officer Bale on Mr. Dunn's unlawful arrest claim.

Second, Mr. Dunn's role in the incident is highly disputed.  Officer Skommesa asserts that when he arrived in response to the call for backup, Mr. Dunn was holding on to Officer Hyra's jacket and trying to pull him away from Mr. Tompkins.  (Skommesa Dep. 45:3-11.)  According to Plaintiffs, however, Mr. Dunn stayed at least three feet away from Officer Hyra at all times and his involvement in the altercation was limited to requesting the return of the flag, taking photos, and encouraging the attendees at the rally to "witness suppression of free speech."  (*See* Dunn Decl. ¶¶ 45, 46.)  The court

---

[14] In relevant part, RCW 9A.36.031 provides:

(1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
(a) With intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself or another person, assaults another; or
. . .
(g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault[.]

determines that a reasonable officer faced with the facts described by Plaintiffs would not have concluded that there was a fair probability that Mr. Dunn had assaulted an officer. The court therefore finds that there is a genuine issue of material fact regarding whether Officer Skommesa had probable cause to arrest Mr. Dunn.

### d. Qualified Immunity

Having determined that violations of Mr. Tompkins's and Mr. Dunn's Fourth Amendment rights could be established on a favorable view of Plaintiffs' evidence, the court must ask whether the right was clearly established. At the time of the events at issue in this case, it had long been established that a warrantless arrest is justified only where there is probable cause to believe that a criminal offense has been committed. *See, e.g.*, *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004). Viewing the facts in the light most favorable to Plaintiffs, the court determines that a reasonable officer faced with the facts described above would have concluded that it was unlawful to arrest Mr. Tompkins for obstruction and resisting arrest and Mr. Dunn for third degree assault. The court finds that the factual disputes prevent the court from ruling as a matter of law that the officers are entitled to qualified immunity. The court denies Defendants' motion for summary judgment on Mr. Tompkins's unlawful arrest claims against Officer Hyra and Officer Bale and on Mr. Dunn's unlawful arrest claim against Officer Skommesa.

### 3. Excessive Force

Courts analyze Fourth Amendment excessive force claims under the framework established by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989). The

basic test under *Graham* is one of objective reasonableness. This requires courts to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396; *see Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc); *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). In doing so, "[t]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397. "The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of *all* the relevant circumstances." *Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 1991) (emphasis in original). The Supreme Court cautions that the reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. If the evidence, viewed in the light most favorable to Plaintiffs, could support a finding of excessive force, summary judgment is not appropriate. *Smith*, 394 F.3d at 700.

In the Ninth Circuit, the objective reasonableness inquiry under *Graham* is a three-step analysis: First, the court must assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force used. *Miller*, 340 F.3d at 964. Second, the court must assess the importance of the governmental interests at stake by considering the *Graham* factors: (1) the severity of the crime, (2) whether the suspect posed an immediate threat to the safety of the officer and others, and

(3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id*. Third, the court must balance "the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." *Id*.

In their motion and reply, Defendants rely heavily on *Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001). The events at issue in *Jackson* took place at a gathering attended by 30 to 50 people. *Id.* at 649. Officers attempted to arrest Ms. Jackson's son, Blake, on an outstanding warrant. *Id.* Members of the group became angry and tried to shield Blake from arrest. *Id.* When one of the officers started to fight with a friend of Ms. Jackson's, Ms. Jackson "ran to interfere." *Id.* at 650. In arresting Ms. Jackson for failure to disperse, the officers sprayed her with a chemical irritant; pushed her to the ground for handcuffing and roughly brought to her feet; and rolled up the windows and turned up the heat after putting her in his squad car. *Id.* Ms. Jackson was later convicted. *Id.* Applying *Graham*, the court first found that the gravity of the intrusion on Ms. Jackson's interests was "minimal." *Id.* at 652. The chemical irritant was sprayed on Ms. Jackson's hair, the handcuffing procedure was "normal," and the officers rolled up the windows of the car because she was arguing with them. *Id.* Second, the court found the governmental interests at stake were relatively large where the police were trying to arrest Ms. Jackson's son on an outstanding felony arrest warrant, where there were concerns about controlling a "rapidly evolving" situation, and where Ms. Jackson was actively interfering with the arrest, thus threatening the officers'

ability to control the group.  *Id.* at 652-53.  The court held that the use of force was not excessive and that summary judgment was appropriate on Ms. Jackson's excessive force claims.  *Id.* at 653.

              *a.*       *Erwin*

Mr. Erwin asserts excessive force claims against Officer Hyra, Officer Bale, Officer Roberson, and Sergeant Martin.  Preliminarily, Mr. Erwin expressly stated in his deposition that only Officer Roberson and Sergeant Martin ever touched him.  (Erwin Dep. 84:14-25.)  Because Officer Hyra and Officer Bale did not touch Mr. Erwin, the court grants summary judgment on Mr. Erwin's excessive force claims against Officer Hyra and Officer Bale.

Under the *Graham* analysis, the facts viewed in the light most favorable to Mr. Erwin do not establish that the officers violated his constitutional rights.  First, with respect to the gravity of the intrusion, Mr. Erwin asserts that Officer Roberson tried to bend his fingers back but did not succeed because he balled them into a fist; that Officer Roberson used his weight to put him onto the ground; that Sergeant Martin and Officer Roberson grabbed his arms in order to handcuff him; that the officers applied the handcuffs too tightly; and that Sergeant Martin and Officer Roberson roughly pulled him up by his handcuffs.  These are akin to the officers' acts in *Jackson*, and the court finds that these are relatively minimal intrusions.

Second, with respect to the governmental interests, Mr. Erwin admits that he was pulling Mr. Tompkins away from Officer Hyra, and the court finds that the officers had

a safety interest in controlling what was, under any view of the facts, an escalating conflict between the officers and the people attending the rally. Balancing the gravity of the intrusion against the governmental interests, and viewing the facts in the light most favorable to Plaintiffs, the court determines that Sergeant Martin and Officer Roberson, did not use excessive force against Mr. Erwin, and grants Defendants' motion for summary judgment on Mr. Erwin's excessive force claims.

b. *Tompkins*

Mr. Tompkins asserts excessive force claims against Officer Hyra and Officer Bale. The facts surrounding the officers' use of force on Mr. Tompkins are in dispute. Mr. Tompkins asserts that Officer Hyra intentionally ran his bike into his leg without provocation, threw him against a tree, and pinned him to the tree. He asserts that Officer Bale bent his fingers apart, causing him pain, and applied his handcuffs too tightly. The officers, for their part, contend that Mr. Tompkins refused to obey Officer Hyra's order to stop blocking his path and intentionally ran into Officer Hyra's bike. Viewed in the light most favorable to Plaintiffs, the physical intrusion of being hit with the bike and thrown into the tree outweighs the governmental interest. The court cannot find as a matter of law that the officers' use of force against Mr. Tompkins was reasonable.

Having determined that a violation of the Fourth Amendment could be established on a favorable view of Plaintiffs' evidence, the court must ask whether the right was clearly established. It was clearly established at the time of the events at issue in this case that a law enforcement officer's use of force must be reasonable under all of

ORDER - 24

the circumstances. *See, e.g.*, *Hammer*, 932 F.2d at 846. Defendants repeatedly argue

that their use of force was reasonable because the officers feared for their lives. An

officer's subjective beliefs, however, are irrelevant to the qualified immunity inquiry.

*See Morgan v. Woessner*, 997 F.2d 1244, 1260 (9th Cir. 1991). Defendants also argue,

citing *Jackson*, that Officer Hyra and Officer Bale would reasonably believe that the use

of physical distraction techniques to subdue Mr. Tompkins would be lawful under the

circumstances. Under Plaintiffs' view of the facts, however, Mr. Tompkins was simply

photographing Officer Hyra and Mr. Erwin; he did nothing that would require the

officers to use physical distraction techniques, let alone to strike him with a bike or

throw him against a tree. Viewing the facts in the light most favorable to Plaintiffs, the

court determines that a reasonable officer would have known that the conduct alleged

was unlawful. Because genuine issues of material fact prevent the court from finding, as

a matter of law, that Officer Hyra and Officer Bale are entitled to qualified immunity,

the court denies summary judgment on Mr. Tompkins's excessive force claims.

        *c.*     *Dunn*

       Mr. Dunn asserts excessive force claims against Officer Skommesa, Officer

Greeley, Officer Hyra, and Officer Bale. Preliminarily, Mr. Dunn affirmatively stated

that neither Officer Hyra nor Officer Bale touched him, and he never mentions being

touched by Officer Greeley in either his deposition or his declaration. (*See* Dunn Dep.

203:3-204:11; *see generally* Dunn Decl.; *see also* Resp.) Because Mr. Dunn states that

only Officer Skommesa touched him, summary judgment for Officer Hyra, Officer Bale,

and Officer Greeley is appropriate on Mr. Dunn's excessive force claims.  (*See* Dunn Decl. ¶¶ 69-72.)

The facts surrounding the officers' use of force on Mr. Dunn are in dispute. Under Plaintiffs' view of the facts, Mr. Dunn was standing in the background taking photographs when Officer Skommesa tackled him to the ground.  (Dunn Decl. ¶¶ 69-72; Dunn Dep. 262:13-22.)  Officer Skommesa contends that Mr. Dunn was hanging on to Officer Hyra's jacket to try to pull him away from Mr. Tompkins.  (Skommesa Dep. 45:3-11.)  Viewing the evidence in the light most favorable to Plaintiffs, however, there was an excessive use of force because the intrusion of being tackled by a police officer outweighs the government interest in subduing an individual who is standing in the background taking photographs.  Qualified immunity is inappropriate because a reasonable officer would not reasonably believe that tackling a person who is taking photographs is lawful.  The court therefore denies summary judgment on Mr. Dunn's excessive force claims against Officer Skommesa.

4.    Malicious Prosecution

In order to succeed on a malicious prosecution claim under § 1983, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right."  *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).  There is a rebuttable presumption that a prosecutor exercises independent judgment in deciding to file criminal charges, thus immunizing the investigating officers

from liability for injuries suffered after the charging decision. *Id.* at 1067. This presumption may be rebutted with evidence that the officers "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.* "A plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment." *Newman v. County of Orange*, 457 F.3d 991, 994 (9th Cir. 2006). Rather, "a plaintiff must present information in addition to his own account that contradicts the police report" in order to show that the prosecutor relied on the police investigation and arrest. *Beck v. City of Upland*, 527 F.3d 853, 863 n.9 (9th Cir. 2008) (citing *Newman*, 457 F.3d at 994-95). "A police officer who maliciously or recklessly makes false reports to the prosecutor may be held liable for damages incurred as a proximate result of those reports." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007).

Here, although Plaintiffs allege that the Defendant Officers lied in their incident reports, their own declarations and depositions are the only admissible evidence available to support their allegations. Because Plaintiffs failed to present evidence beyond their own accounts to rebut the presumption that the prosecutors exercised independent judgment in filing charges against them, *see Beck*, 527 F.3d at 863 n.9, the court grants summary judgment to Defendants on Plaintiffs' federal malicious prosecution claims.

5.    First Amendment

Plaintiffs assert First Amendment claims against Officer Hyra, Officer Bale, Sergeant Martin, and Lieutenant Hayes.  "In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'"  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Sloman v. Tadlock,* 21 F.3d 1462, 1469 (9th Cir. 1994)).  Defendants argue that summary judgment is appropriate (1) because probable cause defeats First Amendment claims and Defendants' conduct was justified by probable cause (Mot. at 13); and (2) because Plaintiffs cannot show that a desire to deter Plaintiffs' political speech was a substantial or motivating factor in the alleged conduct.  (Mot. at 20.)

The court agrees with Defendants that Plaintiffs have not established a genuine issue for trial on their First Amendment claims.  Defendants point to evidence that the officers agreed to socially contact individuals possessing black flags based on Ms. Rood's concern that persons gathering under a black flag would disrupt the rally.  (*See, e.g.*, Mot. at 2-3.)  Plaintiffs counter only with a bare accusation that the Defendant Officers "targeted" Plaintiffs "because of their perceived ideology and the symbol [o]f their political expression, the flag."  (Resp. at 27.)  Although Plaintiffs argue that Defendants' actions were analogous to "an ideological witch hunt" (*Id.* at 13), Plaintiffs direct the court to no evidence, beyond their own speculation, that a desire to deter or

chill Plaintiffs' political speech was a substantial or motivating factor in Defendants' alleged conduct. (*See id.*) Because Plaintiffs have not met their burden to identify facts that show a genuine issue for trial, the court grants summary judgment to Defendants on Plaintiffs' First Amendment claims against Officer Hyra, Officer Bale, Lieutenant Hayes, and Sergeant Martin.

      6.    <u>Equal Protection / Discriminatory Law Enforcement</u>

"A government entity has discretion in prosecuting its criminal laws, but enforcement is subject to constitutional constraints." *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1152-53 (9th Cir. 2007) (citing *Wayte v. United States,* 470 U.S. 598, 608 (1985)). "To prevail on its claim under the equal protection clause of the Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Id.* "To establish a discriminatory effect, the claimant must show that similarly situated individuals were not prosecuted." *Id.* (quoting *United States v. Armstrong,* 517 U.S. 456, 465 (1996) (internal quotation marks and edits omitted)). "To show discriminatory purpose, a plaintiff must establish that the decision-maker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (quoting *Wayte,* 470 U.S. at 610).

Defendants state that Plaintiffs have "alleged no facts indicating the officers treated them differently based on a constitutionally impermissible ground." (Mot. at 18.) In their response, Plaintiffs state that they were approached because Officer Hyra

perceived them as being anarchists, and Defendants' allegation that the officers were looking for black flags based on Ms. Rood's description "does not evade the liability for this discriminatory conduct." (Resp. at 25-26.)

Plaintiffs have not met their burden to establish a genuine issue of material fact regarding their Equal Protection claims against Defendants. First, as discussed above, Plaintiffs have made no allegation that anyone other than Officer Hyra, Officer Bale, Sergeant Martin, or Lieutenant Hayes was aware of or motivated by Plaintiffs' political affiliation. Second, although Plaintiffs make a number of sweeping statements, such as that the police action "was based on a vague description of unspecified activity that might be carried out by a vague group of people according to an unattributed web posting" and that this "sounds like an ideological witch hunt," they do not direct the court to evidence supporting a finding that others similarly situated were not prosecuted. (*See id.* at 12-13.) The court therefore grants summary judgment to Defendants on Plaintiffs' equal protection and discriminatory law enforcement claims.

7.    Invasion of Privacy

Plaintiffs allege that Defendants violated their constitutional "right to be free from invasion or interference with Plaintiffs' zone of privacy." (Compl. ¶ 4.2(b).) Plaintiffs have not clarified the elements of their invasion of privacy claim, nor have they identified which specific facts support this claim. Defendants argue that Plaintiffs can prove an invasion of privacy cognizable under § 1983 only where there is "conduct so outrageous as to 'shock anyone's conscience.'" (Mot. at 18.) They contend that

Plaintiffs have not testified to any abuse of privacy, nor made any allegations that Defendants' conduct would shock one's conscience.  (*Id.*)

Plaintiffs appear to have adopted Defendants' construction of their invasion of privacy claim.  Their entire response to Defendants' argument is that "[t]he conduct herein shocked the conscience of the Judge in the criminal case, and is so inherently unreasonable and brutal as to shock the conscience."  (Resp. at 26.)  They do not, however, point the court to any conduct by any Defendant that would constitute an invasion of any individual Plaintiff's privacy, let alone one that would shock one's conscience.   The court therefore finds that there is no genuine issue of material fact as to whether any Defendant violated any Plaintiff's right to privacy and grants summary judgment to Defendants on Plaintiffs' § 1983 invasion of privacy claims.

## C.     Federal Claims Against the City

A municipality may be held liable under § 1983 only where the municipality itself causes the constitutional violation at issue; the municipality will not be held liable under *respondeat superior.  Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  A plaintiff may establish municipal liability by proving "that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity."  *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (quotations omitted); *see also Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).  A municipality may also be held liable on a theory of deliberate indifference to the

plaintiff's constitutional rights. *Christie v. Iopa*, 176 F.3d 1231, 1240 (9th Cir. 1999). "[T]here must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) (en banc) (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)). It is not enough merely to "allege that the existing program represents a policy for which the city is responsible." *Id.* (citing *City of Canton*, 489 U.S. at 389) (internal edits omitted).

Defendants argue that the City does not have any unconstitutional policies, practices, or customs. (Mot. at 11 (citing Declaration of Interim Chief John Diaz ("Diaz Decl.") (Dkt. # ) ¶¶ 3-9.) They also argue that Plaintiffs have not identified sufficient facts showing a genuine issue for trial on their *Monell* claims. (*Id.* at 9-12.)

    1.   <u>Policy or Custom</u>

"A municipality may be held liable under § 1983 only where 'an action pursuant to official municipal policy of some nature causes a constitutional tort.'" *Harper v. City of Los Angeles*, 533 F.3d 1010, 1024 (9th Cir. 2008). To support their claim that the City's official policies allowed the officers to violate their rights, Plaintiffs point only to Officer Hyra's deposition testimony. (Resp. at 10-11, 20-22.) Officer Hyra testified about training he received before two earlier protests at which police anticipated disruptions by "splinter groups." (Pls. Hyra Dep. 37:23-38:18.) The officers were shown videos of persons, including some identified as anarchists, causing violent disruptions during protests in other cities. (*Id.* 39:6-22; 42:10-13.) The officers were

told that they could recognize the splinter groups using colors and symbols.  (*Id.* 38:19-39:8; 41:8-17.)   Officer Hyra's testimony does not present a genuine issue of material fact regarding whether the City had a policy of violating the First or Fourth Amendment rights of persons identified as anarchists.  Plaintiffs do not direct the court to any other evidence supporting a finding that the City had an official municipal policy or custom of violating citizens' First or Fourth Amendment rights or that such a policy actually caused the violation of Plaintiffs' constitutional rights.  The court finds that Plaintiffs have not met their burden to show a genuine issue for trial on the City's liability for its policies.

    2.   <u>Failure to Train</u>

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton,* 489 U.S. at 389.  To support their "failure to train" claim, Plaintiffs again point only to Officer Hyra's description of the briefings he received before two earlier protests.  (*See* Resp. at 10-11, 20-22.) Plaintiffs do not address how this training manifests a "deliberate indifference" to Plaintiffs' First Amendment or Fourth Amendment rights; that is, they have "produced no evidence showing that the alleged inadequacy of his training was a the result of a 'deliberate' or 'conscious' choice, which, under Canton, is necessary to establish a municipal policy."  *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1367

(9th Cir. 1994). The court finds that Plaintiffs have not met their burden to show a genuine issue for trial regarding the City's failure to train its officers.

      3.    <u>Failure to Supervise</u>

To support their "failure to supervise" claim, Plaintiffs rely on their allegation that Lieutenant Hayes and Sergeant Martin ordered Officer Hyra and Officer Bale to socially contact suspected anarchists at the protest. (*See* Resp. at 22-23.) Plaintiffs present no argument or evidence to show how this order reflected the City's deliberate indifference to Plaintiffs' rights; rather, they argue that because Lieutenant Hayes and Sergeant Martin were appointed by the Seattle Police Department, the City is liable for any harm that may have resulted from their order. (*See id.*) This is simply a *respondeat superior* argument and cannot establish liability under *Monell*.

Elsewhere in their response, Plaintiffs point to a past § 1983 lawsuit filed against Officer Hyra and a posting on cell-phone manufacturer Sanyo's website of a letter Officer Hyra allegedly wrote to Sanyo praising his phone in which he stated that he had crashed four police cars. (*See* Resp. at 12-16.) Plaintiffs did not attempt to authenticate either the lawsuit or the posting as evidence supporting their response. Even if the lawsuit and the web posting were admissible, Plaintiffs present no evidence of a causal relationship between the lawsuit and web posting and the alleged constitutional deprivations. The court finds that Plaintiffs have not met their burden to show a genuine issue for trial regarding the City's failure to supervise its officers.

For these reasons, the court grants the City's motion for summary judgment on

Plaintiffs' § 1983 municipal liability claims.

**D.    State-law Claims**

Plaintiffs allege state-law claims for false arrest, false imprisonment, assault and

battery, intentional infliction of emotional distress (outrage), malicious prosecution, and

conversion.  (Compl. ¶¶ 4.15-4:53.)  Defendants move for summary judgment on all

claims. [15]  (Mot. at 12-20.)

1.    <u>False Arrest / False Imprisonment</u>

To establish a claim for false arrest under Washington law, a plaintiff must show

that the defendant violated the plaintiff's right of personal liberty or restrained the

plaintiff without legal authority.  *Bender v. City of Seattle*, 664 P.2d 492, 499 (Wash.

1983).  To establish false imprisonment, the plaintiff must show that the defendant

intentionally confined him without justification.  *Id.*  One may be liable for false arrest

or false imprisonment even if he or she did not physically restrain the plaintiff, provided

the defendant took some "active part" in bringing about the unlawful arrest "by some

affirmative direction, persuasion, request or voluntary participation."  *Id.* at 500 n.3

(internal quotation marks and citation omitted).  Probable cause is a complete defense to

an action for false arrest or false imprisonment.  *McBride v. Walla Walla County*, 975

P.2d 1029 (Wash. 1999).

---

[15] Defendants have not moved for summary judgment regarding the City's vicarious
liability for the state-law torts of its officers.

ORDER - 35

As explained in more detail above, there are genuine issues of material fact regarding the circumstances under which Plaintiffs were arrested. The court therefore denies Defendants' motion for summary judgment on Mr. Tompkins's false arrest and false imprisonment claims against Officers Hyra and Bale and on Mr. Dunn's false arrest and false imprisonment claims against Officer Skommesa.

2. Assault and Battery

Battery is an intentional act resulting in "harmful or offensive contact with a person," and "[a]n assault is any act of such a nature that causes apprehension of a battery." *McKinney v. Tukwila*, 13 P.3d 631, 641 (Wash. Ct. App. 2000). Although Washington recognizes a form of qualified immunity for law enforcement officers, that immunity is not "available for claims of assault and battery arising out of the use of excessive force to effectuate an arrest." *Staats v. Brown*, 991 P.2d 615, 627-28 (Wash. 2000).

As discussed above, there are genuine issues of material fact regarding the Defendant Officers' use of force against Mr. Tompkins and Mr. Dunn. Accordingly, the court denies summary judgment on Mr. Tompkins's assault and battery claims against Officer Hyra and Officer Bale and on Mr. Dunn's assault and battery claims against Officer Skommesa.

3. Intentional Infliction of Emotional Distress

In Washington, the tort of intentional infliction of emotional distress ("IIED") requires a plaintiff to establish proof of three elements: (1) extreme and outrageous

conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result of severe emotional distress. *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003); *Reid v. Pierce County*, 961 P.2d 333, 337 (Wash. 1998); *Grimsby v. Samson*, 530 P.2d 291, 295-96 (Wash. 1975). A plaintiff cannot recover on an IIED theory when damages for mental or emotional distress are already recoverable under an assault claim. *Rice v. Janovich*, 742 P.2d 1230, 1238 (Wash. 1987); *see also Bankhead v. City of Tacoma*, 597 P.2d 920, 925 (Wash. Ct. App. 1979) (affirming dismissal of outrage claim on motion for summary judgment because plaintiff had an assault claim).

Defendants argue that the court must grant summary judgment because the Plaintiffs "cannot establish the requisite objective symptomatology" and because the claims are subsumed within Plaintiffs' state law assault and battery claims. (Mot. at 19.) Washington courts do not require proof of objective symptomatology to prevail on an IIED claim. *See Kloepfel*, 66 P.3d at 631. Nevertheless, Plaintiffs' IIED claims should be dismissed because they are subsumed within their state law assault and battery claims. The court therefore grants Defendants' motion for summary judgment as to Plaintiffs' IIED claims.

### 4.    Malicious Prosecution

Malicious prosecution has five elements under Washington law: (1) the defendant instituted or continued a prosecution; (2) without probable cause; (3) with malice; (4) in a proceeding terminated in the plaintiff's favor; (5) to plaintiff's injury. *Hanson v. City of Snohomish*, 852 P.2d 295, 298 (Wash. 1993). "Although all elements must be proved,

malice and want of probable cause constitute the gist of a malicious prosecution action." *Id.* Probable cause is a complete defense to an action for malicious prosecution. *Id.*

Defendants first argue that they are entitled to summary judgment because there was probable cause to arrest the Plaintiffs. (Mot. at 13.) As discussed more fully above, under Plaintiffs' view of the facts, only Officer Roberson and Sergeant Martin had probable cause to arrest Mr. Erwin; there remain genuine issues of material fact regarding whether other officers had probable cause to arrest Plaintiffs.

Defendants next argue that Plaintiffs have failed to establish a genuine issue of fact regarding whether any defendant instituted or continued a prosecution with malice. (Mot. at 16-17.) To establish malice, a plaintiff must prove that a defendant undertook an allegedly malicious prosecution from improper or wrongful motives or in reckless disregard of the plaintiff's rights. *Bender*, 664 P.2d at 501. In their response, Plaintiffs state only that the incident reports were false and that the prosecutions were based on these false reports. Plaintiffs do not point the court to evidence showing a genuine issue of material fact as to whether any individual defendant initiated or continued the prosecutions of the Plaintiffs based on a wrongful motive or a reckless disregard of Plaintiffs' rights. The court therefore grants summary judgment to Defendants on Plaintiffs' state-law malicious prosecution claims.

5.    Conversion

Washington law defines conversion as "the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." *Potter v. Wash.*

*State Patrol*, 196 P.3d 691, 696-97 (Wash. 2008) (internal quotation and quotation marks omitted).  The interference need not be permanent; exclusion from rightful possession for an unreasonable period of time may be an unjustified, willful interference constituting a conversion.  *Olin v. Goehler*, 694 P.2d 1129, 1132 (Wash. Ct. App. 1985) (defendants were liable for conversion where they unjustifiably excluded the plaintiffs from their personal property for an unreasonable period of time); *Demelash v. Ross Stores, Inc.*, 20 P.3d 447, 455 (Wash. Ct. App. 2001) (discussing *Olin* and holding that the jury must determine whether a delay of 16 days in returning plaintiff's coat constituted conversion).

Mr. Dunn asserts conversion claims against Officer Bale, Officer Hyra, and the City.  Mr. Dunn claims that Officer Hyra and Officer Bale converted his flag by taking it from him at the rally and refusing to return it until this court ordered its return in July 2009.  (Compl. ¶ 4.48-4.53; *see* Dkt. # 45.)  Defendants argue that Officer Hyra was legally entitled to take the flag for officer safety reasons, and that, in any event, they are entitled to summary judgment on Mr. Dunn's conversion claim because the City has returned the flag.  (Mot. at 20.)  In their response, Plaintiffs argue that Defendants remain liable for converting the flag because they held the flag for over three years and damaged it before returning it.  (Resp. at 27.)

As discussed above, there are questions of disputed fact as to whether Officer Hyra, assisted by Officer Bale, was justified in taking the flag for legitimate safety reasons.  Moreover, under *Olin* and *Demelash*, there is a question of disputed fact as to

whether the City retained possession of the flag for an unreasonable length of time. The court denies summary judgment on Mr. Dunn's conversion claims against Officer Hyra, Officer Bale, and the City.

### III.     CONCLUSION

The court GRANTS in part and DENIES in part Defendants' motion for summary judgment (Dkt. #62.)

1. The court GRANTS Defendants' motion for summary judgment on Plaintiffs' claims against Officer Greeley, Officer Roberson, Lieutenant Hayes, and Sergeant Martin. Officer Greeley, Officer Roberson, Lieutenant Hayes, and Sergeant Martin are dismissed from this lawsuit.

2. The court GRANTS Defendants' motion for summary judgment on Plaintiffs' § 1983 municipal liability claims against the City.

3. The court DENIES Defendants' motion for summary judgment on the following federal claims:

   a. Mr. Erwin's and Mr. Dunn's unlawful seizure claim against Officer Hyra and Officer Bale;

   b. Mr. Tompkins's unlawful arrest and excessive force claims against Officer Hyra and Officer Bale; and

   c. Mr. Dunn's unlawful arrest and excessive force claims against Officer Skommesa.

   The court GRANTS Defendants' motion for summary judgment on Plaintiffs' remaining federal claims.

4. The court DENIES Defendants' motion for summary judgment on the following state-law claims:

   a. Mr. Tompkins's false arrest, false imprisonment, and assault and battery claims against Officer Hyra and Officer Bale;

b. Mr. Dunn's false arrest, false imprisonment, and assault and battery claims against Officer Skommesa; and

c. Mr. Dunn's conversion claim against Officer Hyra, Officer Bale, and the City.

The court GRANTS Defendants' motion for summary judgment on Plaintiffs' remaining state-law claims.

Dated this 2nd day of November, 2009.


_____
JAMES L. ROBART
United States District Judge